IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GWENDOLYN WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 3936 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| MENARDS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On July 7, 2018, the plaintiff was shopping with her husband for spray paint at the defendant's Joliet store. As she was carrying several spray paint cans in a five-gallon bucket down one of the main aisles in the store, she says she tripped and fell over a metal plate fastened to, but not flush with, the floor. The plaintiff filed suit for damages for her injury under theories of negligence and premises liability, and the defendant has moved for summary judgment.

I.

**SUMMARY JUDGMENT**

A.

**Fed.R.Civ.P. 56**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must construe the evidence and all inferences that reasonably can be drawn from it in the light most favorable to the nonmoving party. *Allin v. City of Springfield*, 845 F.3d 858, 861 (7th Cir. 2017); *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 340 (7th Cir. 2016). But, the court

makes "only reasonable inferences, not every conceivable one." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014). Not every purported factual dispute precludes summary judgment; the dispute must be material and genuine. *Alston v. City of Madison*, 853 F.3d 901, 910 (7th Cir. 2017). A factual dispute is "genuine" only if a reasonable jury could find for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Alston*, 853 F.3d at 910 (7th Cir. 2017). If the opponent – here, the plaintiff – " 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' summary judgment must be granted." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797-98 (7th Cir. 2017). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]o survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of [his] case." *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019). When considering a motion for summary judgment, a court "must resist the trap of assessing the credibility of witnesses, choosing between competing inferences or balancing the relative weight of conflicting evidence." *Orton-Bell v. Indiana*, 759 F.3d 768, 773 (7th Cir. 2014). Sometimes a party makes that task difficult – perhaps by lodging speculative claims or attempting to obscure the facts, but the court must remain true to its task. *Khan v. Midwestern Univ.*, 879 F.3d 838, 840 (7th Cir. 2018).

### B.

### Local Rule 56.1

As always, the facts underlying this summary judgment proceeding are drawn from the parties' Local Rule 56.1 submissions. "For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a summary judgment proceeding." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir.2012). Local Rule 56.1 requires a party seeking

summary judgment to include with its motion "a statement of material facts as to which the ...party contends there is no genuine issue and that entitle the...party to a judgment as a matter of law." Local Rule 56.1(a)(3); *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir.2008). Each paragraph must refer to the "affidavits, parts of the record, and other supporting materials" that substantiate the asserted facts. Local Rule 56.1(a)(3); *F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir.2005).

The party opposing summary judgment must then respond to the movant's statement of proposed material facts; that response must contain both "a response to each numbered paragraph in the moving party's statement," Local Rule 56.1(b)(3)(B), and a separate statement "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." Local Rule 56.1(b)(3)(C); *Ciomber*, 527 F.3d at 643. Again, each response, and each asserted fact, must be supported with a reference to the record. Local Rule 56.1(b)(3)(B); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir.2009); *Bay Area Business Council, Inc.*, 423 F.3d at 633.

The district court is entitled to enforce strict compliance with its local rules regarding summary judgment motions. *Mendoza v. Herrera*, 2020 WL 3975468 (N.D.Ill. 2020). *See also Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015)("This court has repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment...."); *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir.2011); *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir.2010). Responses and facts that are not set out properly and appropriately supported in a Rule 56.1 filing will not be considered. *See Shaffer v. American Medical Association*, 662 F.3d 439, 442 (7th Cir.2011); *Bay Area Business Council*, 423 F.3d at 633. Moreover, when a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner the rule demands, those facts may be deemed

admitted for purposes of the motion. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

## II.

## FACTS

First, the culprit. It's a 12-inch-by-12-inch square, metal plate, silver in color. [Dkt. #28, Par. 48; #33, Par. 48]. The metallic silver in color causes the plates to stand out against the floor, which is a matte finish, and dark beige. [Dkt. #29-9; #29-10]. There are several such plates situated along the sides of the main aisle where plaintiff fell. [Dkt. #29-10]. So, do they present a tripping hazard? Here's what the assistant general manager of the store had to say about that:

Q: Is the plate flush with the floor?

A: Yes.

Q: It doesn't stick up at all?

A: Not really, no.

Q: Not really or no?

A: No, it – no. The scrubber goes right over it. It's minute. I – I don't know.

Q: If you were to run your hand over it, does the plate rise at all from the rest of the floor around it?

A: Yes.

Q: How much?

A: I don't know. It's rather minute, so I couldn't measure it. I don't know the measurement.

Q: But, I mean, it's fair to say –

A: What an electrical plate is, whatever the width of an electrical plate would be. It's –

>Q: Okay.  Fair to say though, it's not flush with the concrete floor –
>
>A: Yes.

[Dkt. # 29-3, at 47-48].  If it sticks up minutely, it's not flush, of course.  But defendants assert in their statement of facts that the rise is minute [Dkt. #28, Par. 49], and so – because plaintiff cites no evidence to support her disagreement with that characterization [Dkt. #28, Par. 49] – minute is the characterization to be employed. *Curtis*, 807 F.3d at 218; *Cracco*, 559 F.3d at 632.  The photos in the record don't contradict that assessment.  [Dkt. #29-9; #29-10].  One would think someone, especially from the plaintiff's side, would have measured it, as it is the reason for everything the parties have done in this case so far and the work they have asked the court to do in this proceeding.  But that did not occur.

Then there's the fall.  The only evidence we have about plaintiff's fall is the deposition testimony from the plaintiff.  There were a number of "distractions" in that deposition that prevented defendant's counsel from zeroing in on this issue.  Some were relevant; many, at least in hindsight, were not. But given the nature of depositions as necessarily exploratory devices, the questioning made sense. Counsel wanted to know, for example, where plaintiff lived, why she took baby aspirin before her injury, who her cardiologist is, where that doctor's office is, where she went to high school, her insurance card number, where she went for primary care before she lived in Bolingbrook, what doctor she saw for bunions, where her daughter lives, who is her daughter's stepfather, when that gentleman died [Dkt. #29-6, at 1-25], and a number of other background. Counsel then turned to the specific matter at hand: Plaintiff and her husband were at Menard's, shopping for spray paint, and plaintiff had a bucket with spray paint in it in her hand. [Dkt. #29-6, at 26].  She said she wasn't looking at her phone. [Dkt. #29-6, at 27]. Counsel wondered if she still had the same phone; plaintiff didn't think so, but she had the same carrier. [Dkt. #29-6, at 28].

5

Then there were pages of questions dealing with where plaintiff had worked, what she did in that job, medical treatment, a previous lawsuit regarding a bus accident, that she filed bankruptcy 23 years ago, then back to her symptoms from her injury, and treatment she underwent, and activities she could no longer do. [Dkt. #29-6, at 27-113]. Counsel asked a few questions about plaintiff's footwear– little white sandals. [Dkt. #29-6, at 38-40]. Finally, counsel returned to the incident:

> Q: All right. What you all want to talk about is the Menard event. I understand that you went there to get some paint and some other things, and you were with your husband, and you were on your way out when this happened. Is that true?
>
> A: I was on my way to the register.
>
> Q: You were right with him at the time?
>
> A: Yes.
>
> Q: He was right by your side; correct?
>
> A: We were together. I don't know if that's –
>
> Q: Was he ahead of you, behind you?
>
> A: I don't know.
>
> Q: Did you or he have a cart?
>
> A: Not that I remember. We didn't have a cart. I didn't have a cart.
>
> Q: Might you have had two buckets of paint in your hand?
>
> A: A bucket with paint in the bucket.

[Dkt. #29-6, at 113-14]. The questioning then turned to the shoes plaintiff was wearing:

> Q: If you're from the front of the store facing the paint [department], it's on the left of the store?
>
> A: I'm in the front of the store. The paint is in the back to the right.

6

> Q: And you're wearing white sandals?
>
> A: I don't know what color my shoes were.
>
> Q: Do you still own a pair of white, kind of strappy sandals?
>
> A: I don't know.
>
> Q: Too many shoes to keep track of?
>
> A: I just don't remember which shoes I had on and if I still own them.

[Dkt. #29-6, at 116]. The questioning then turned to the incident:

> A: I know that's what caused me to fall. I fell right beside it. When I sat up, that's what was there.
>
> Q: Right. You didn't see the plate on the floor before you tripped over it?
>
> A: No.
>
> Q: All right. And if you had seen it, you might have stepped over it or on it, not right on the edge of it; true?
>
> A: Correct.
>
> Q: And you didn't see any other of those just like that in the store before or after?
>
> A: I wasn't paying attention to any plates on the floor.
>
> Q: Do you know how many other deviations in elevation or grade there are in that store other than those metal plates that are in the concrete path?
>
> A: Do I know how many?
>
> Q: Yeah.
>
> A: No.
>
> Q: Do you know how many transitions there are from tile to carpet where there's a half-inch piece of molding you have to clear?
>
> A: No.
>
> Q: Do you know how many electrical plates of a cylindrical kind that are in that store

> that you have to clear when you walk around?
>
> A: No.
>
> Q: Do you know whether or not these codes were in compliance with the building code at the time?
>
> A: I do not.

[Dkt. #29-6, at 121-22].

The questioning moved on to what employees were there and how they responded, and concluded shortly thereafter. A day before she filed her response to defendant's motion for summary judgment, plaintiff swore out a brief affidavit in which she said:

> 2. While shopping in the store leading up to and just prior to my fall, in addition to my immediate surroundings, I was also paying attention to making my way to the cash registers, signage on the floor, signage on the shelves, merchandise displays and other signage in the store and other customers and employees in my vicinity.
>
> 3. Though I was reasonably careful, my attention was distracted from exclusive focus on the walkway immediately in front of me, by this other activity, displays, and advertisements with the store.

[Dkt. #32-1].

## III.

## ANALYSIS

Plaintiff has decided to proceed under an ordinary negligence theory rather than a premises liabilty theory. [Dkt. #32, at 3]. Under that theory, we begin with the premise that landowners owe business invitees a duty of care to keep their premises reasonably safe. *McCarty v. Menard, Inc.*, 927 F.3d 468, 471 (7th Cir. 2019); *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016); *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 141 (1990). Illinois courts consider four factors when deciding if a duty of care exists: (1) the reasonable foreseeability of the harm; (2) the likelihood of

8

the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the premises owner. *McCarty*, 927 F.3d at 471; *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018).

Plaintiff has failed to establish that defendant failed to keep its premises reasonably safe. The plates, protruding only minutely, present no foreseeable risk of harm. There is no evidence that anyone ever tripped over them before, and all deponents – workers at the defendants' store that day– testified they were unaware of anyone ever having done so. [Dkt. #28, Pars. 28, 33, 51-54; Dkt. #33, Pars. 28, 33, 51-54]. The plaintiff submits that the mere fact that *she* tripped [Dkt. #32, at 4] means the plate was unreasonably dangerous [Dkt. #32, at 4]; but that's inaccurate: "That [plaintff] fell in the Menard [store], as painful as that fall was, is not enough to support an inference of negligence against Menard." *Piotrowski*, 842 F.3d at 1041. "[A] temporal sequence does not show causation. *Post hoc ergo propter hoc* is the name of a logical fallacy, not a means to prove causation." *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 314 (7th Cir. 2011).

Beyond the mere fact of the fall, all plaintiff has is the testimony of a former sales associate [Dkt. #32, at 4]:

Q: What is this metal plate?

A: I don't know.

\*\*\*

Q: Do you know what it's made of?

A: No.

\*\*\*

Q: How much does this metal plate stick out from the floor?

A: I don't know.

Q: It's not flush with the floor though, is it?

A: No.

Q: If you were to run you're hand over it, you would feel the edge – feel its edge?

A: Yes.

\*\*\*

Q: Do you know if anything could be done to put tape or paint around the metal plate to make it more apparent?

A: No, I don't.

Q: Do you have an opinion as to whether the walkway is as safe as it could possibly be with that metal plate being there?

A: It probably isn't, but I don't see a way you could do – what else you could do about it.

Q: Why do you say, "It probably isn't"?

A: Because it's sticking out. It's not flush with the floor, but it's not – it has like – it's beveled. It's not – it's not something like – like some – like some wheels could still roll over it, you know, from the carts. And I normally – I have never seen anyone trip over it before this.

[Dkt. #29-8, at 19-20].

A former sales associate saying "it probably isn't as safe as it could possibly be" is weak sauce and, in fact, it's no sauce at all for our purposes here. The defendant does not have a duty to make the premises "as safe as they could possibly be." As the Illinois Supreme Court put it in *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 141–42 (1990), "[defendant] did not have to actually remove all dangers from his premises in order to avoid liability." *See also Alcorn v. Stepzinski*, 185 Ill. App. 3d 1, 7 (1989)("To hold otherwise would make every landowner an absolute insurer . . . ."); *Grossman v. Menard, Inc.*, 2018 WL 4563071, at \*2 (N.D. Ill. 2018)("A plaintiff must prove more than a risk of harm existed; the risk must have been unreasonable."). It only has a duty to make the

10

premises "reasonably safe." With all deference, the plaintiff has no evidence – and really, no argument – that defendant failed to do that here.

That is enough to grant summary judgment to the defendant; but, for the sake of thoroughness, we shall proceed a bit further with the analysis. Even if plaintiff had some evidence that the plate with the minute rise and beveled edge was not reasonably safe, given its size and color against the rest of the floor, it was an "open and obvious" condition. The "open and obvious" doctrine implicates the first two factors of the duty of care analysis. *McCarty*, 927 F.3d at 471; *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018). When the doctrine applies "[t]he open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." *Bucheleres v. Chicago Park Dist.*, 171 Ill.2d 435, 665 N.E.2d 826, 832 (1996); *McCarty*, 927 F.3d at 471.

Where no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law. *Bruns v. City of Centralia*, 21 N.E.3d 684, 690, 386 Ill.Dec. 765, 771 (2014). The inquiry is objective; "[t]he question is would a reasonable person with [plaintff's] knowledge of the situation appreciate and avoid the hazardous condition?" *McCarty v. Menard, Inc.*, 927 F.3d 468, 471 (7th Cir. 2019). Plaintiff does not argue that the plates were not open and obvious. [Dkt. #32, at 6]. As already noted, they are metallic silver against a dull, dark beige floor. Plaintiff had been to the defendant's store many times [Dkt. #28, Par. 9; #33, Par. 9], and, on the day, walked down that aisle empty handed before walking all the way back with her bucket of spraypaint to the cash registers. [Dkt. #28, Pars. 10, 11; #33, Pars. 10, 11; #29-10]. *Compare Buchaklian v. Lake Cty. Fam. Young Men's Christian Ass'n*, 314 Ill. App. 3d 195, 202 (2000)("The evidence in the record can support a reasonable inference that the defect in the mat was difficult to discover because of its size, the lack of significant color contrast between the defect and

11

the surrounding mat, or merely the short time that a person has in which to discover the defect as he or she takes a few steps toward the mat."). Plaintiff testified that she didn't see the plate and wouldn't have tripped if she had. But, she argues that the "distraction" exception applies. Again, the argument is not persuasive.

The distraction exception applies "where the possessor [of land] has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Bruns*, 21 N.E.3d at 691. "[T]he distraction exception will only apply," however, "where evidence exists from which a court can infer that plaintiff was actually distracted." *Id.* Importantly, "the mere fact of looking elsewhere does not constitute a distraction." *Bruns*, 21 N.E.3d at 692.

Here, the plaintiff claims that she:

> was distracted by the many items in its store tugging at her attention. Importantly, the floor that [she] tripped on had decals amidst the protruding metal plates that tripped her. Even if the protruding metal plates were not inherently dangerous, they were unreasonably dangerous in these circumstances.

[Dkt. #32, at 8]. So, plaintiff's position is that there were items for sale in the store and the floor had decals on it. If plaintiff was looking at the floor to see the decals, the plates were then clearly visible. Moreover, there are items for sale – and signs – in *every* store. If we were to accept plaintiff's version of the distraction exception, it would be a rule of nearly strict liability for all stores. The exception cannot be applied in the manner the plaintiff suggests.

A good example of how it is and ought to be applied is found in the Seventh Circuit's decision to uphold a grant of summary judgment to the defendant store in *Phillips v. Supervalu Holdings, Inc.*, 172 F.3d 53 (7th Cir. 1999). The facts are rather similar, right down to the footwear. In that case, the plaintiff:

> entered the brightly lit premises of a Cub Foods store on a September morning, wearing open-toed leather sandals. Her husband had dropped her off at the front entrance. [Plaintiff] passed through a set of automatic doors and through a vestibule, then started through another set of automatic doors. No one was in her immediate vicinity. As she walked through the second set of doors, she was looking at a soft drink display immediately in front of her. She also noticed the sale papers for the store set out on a table to her right. There was a mat on the cement floor, but [plaintiff] did not then observe the mat. It was dark in color and had the words "Cub Foods" printed on it. It also had a raised edge or deformation. It was the practice of the store to remove and dispose of mats which became buckled or curled, but this particular mat had not been removed.
>
> When [plaintiff] entered through the second pair of automatic doors, she took a few steps and felt a "tug" on her right foot as if her foot had caught on something. The sandal on her right foot came off. She then fell forward onto her right knee and was gravely hurt. Her right leg was lying from the knee down on what felt like a mat. She did not see what caused the tug on her right foot because she was not looking down. [Plaintiff] assumed that she had slipped on the mat on which her right leg was lying. She noticed at the time that its surface felt different from the cement, although she had not seen the mat. She told the store manager and the assistant manager that she had slipped on a rug and fallen. [Plaintiff's husband] observed the mat when he came to his wife's aid immediately after the fall. At that time he saw a bend or curl in the mat right beside the place where [plaintiff's] shoe lay, a buckling that was discernible in a photograph of the mat taken a year later which [plaintiff's husband] identified at his deposition.

*Id.* at 53.

The plaintiff in *Phillips* was not even looking at the floor, as plaintiff was here, as she noted the decals. In upholding summary judgment for the store, the court observed that "[u]nder *Ward* Illinois courts would rate a bad entryway mat as a very obvious danger and a soft drink display as not much of a distraction." *Phillips v. Supervalu Holdings, Inc.*, 172 F.3d 53 (7th Cir. 1999). The silver metallic plates are very obvious – especially when you are admittedly looking at the floor – and the decals on the floor and products on shelves are not much of a distraction, if at all. Summary judgment is still appropriate.

Nevertheless, it is worthwhile looking at the third and fourth factors: the burden that defendant would incur and the consequences of imposing that burden. *McCarty*, 927 F.3d at 471;

*Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018). The plaintiff does not mention these factors, but does proffer some suggestions for the defendant:

> The Defendant could have taken many simple actions to make its walkway safe for its customers. The Defendant could have placed its protruding metal plates in an area with less foot traffic. The Defendant could have put its protruding metal plates under shelving or displays. The Defendant could have used a metal plate that does not protrude from the floor. The Defendant could have put paint or tape around the protruding metal plate to make its appearance more apparent.

[Dkt. #32, at 4]. There is no evidence that defendant could have placed the metal plates in another aisle or under a shelf. Plaintiff did not conduct a Fed.R.Civ.P. 30(b)(6) deposition, so the record includes no statement from *the defendant* as to where the plates could be located or really, what they were for – although there is employee testimony that they were access points for electrical wiring.[1] Similarly, there is no evidence that defendant could have used a metal plate that does not protrude above the floor at all, as opposed to minutely. Again, there is nothing in the record regarding what's beneath the plates so, perhaps, the plates must protrude minutely. Plaintiff offers only speculation and conjecture, which is insufficient to withstand summary judgment. *See FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021)(A party "must present more than mere speculation or conjecture to defeat a summary judgment motion."); *Bishop v. Air Line Pilots Ass'n Int'l*, 5 F.4th 684, 693 (7th Cir. 2021)("We also need not consider inferences that are supported by only speculation or conjecture, which cannot defeat summary judgment."). As for paint or tape making the plates more visible, they are already "obvious": metallic silver against a darker, matte

---

[1] Plaintiff makes a handful of assertions in which she refers to the defendant's knowledge, but points only to statements of employees testifying as individuals. [Dkt. # 33, Pars. 58, 61, 66, 77]. A deposition of an individual, of course, is not the equivalent of a deposition of an organization under Rule 30(b)(6). *DSM Desotech Inc. v. 3D Sys. Corp.*, 2011 WL 117048, at *10 (N.D. Ill. 2011); *Ball Corp. v. Air Tech of Michigan, Inc.*, 329 F.R.D. 599, 604 (N.D. Ind. 2019); *Bison Advisors LLC v. Kessler*, 2015 WL 4509158, at *2 (D. Minn. 2015); *DHL Express (USA), Inc. v. Express Save Industries Inc.*, 2009 WL 3418148, at *1 n. 4 (S.D.Fl. 2009); *Sabre v. First Dominion Capital, LLC*, 2001 WL 1590544, at *1 (S.D.N.Y. 2001).

background. None of this is adequate to withstand summary judgment.[2]

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #26] is granted.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 1/31/22

---

[2] Moreover, it is not lost on the court that plaintiff's first two suggestions regarding placement of the metal plates elsewhere would require some fairly major reconstruction. Defendant would have defendant rip up the floor, cement over the metallic plates – and whatever is under them, wires apparently – and do so in every store. All that because – based the evidence here and the only testimony presented – a single person tripped over one of the plates because, she claims, she was distracted and not paying attention. *See, e.g., Dunn*, 880 F.3d at 910 (even "less onerous safeguards than continuous surveillance, ... would not be justified given the open and obvious nature of the risk involved.").